UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
ROMAN TAFFESE,

                DOCKET NO.:

         Plaintiff,

    -against-

CITY OF BUFFALO, CITY OF BUFFALO POLICE
OFFICER COURTNEY HALLIGAN, CITY OF   **COMPLAINT**
BUFFALO POLICE OFFICER STEPHEN LESNIAK,
CITY OF BUFFALO POLICE OFFICER MARK
VARA, CITY OF BUFFALO POLICE OFFICER
NICHOLAS YANT, CITY OF BUFFALO POLICE
OFFICER JENNIFER ZANGHI, CITY OF BUFFALO
POLICE OFFICER JOHN/JANE DOES #1-10
(fictitiously named), individually, ERIE COUNTY,  **Jury Trial Demanded**
ERIE COUNTY DISTRICT ATTORNEY'S OFFICE,
ERIE COUNTY DISTRICT ATTORNEY JOHN/JANE
DOES #1-10 (fictitiously named), individually, and
ROBERT RENNER,

           Defendants.
-------------------------------------------------------------------- X

   Plaintiff, ROMAN TAFFESE, by and through her attorneys, THE RUSSELL

FRIEDMAN LAW GROUP, LLP, complaining of the Defendants, CITY OF BUFFALO, CITY

OF BUFFALO POLICE OFFICER COURTNEY HALLIGAN, CITY OF BUFFALO POLICE

OFFICER STEPHEN LESNIAK, CITY OF BUFFALO POLICE OFFICER MARK VARA,

CITY OF BUFFALO POLICE OFFICER NICHOLAS YANT, CITY OF BUFFALO POLICE

OFFICER JENNIFER ZANGHI, CITY OF BUFFALO POLICE OFFICER JOHN/JANE DOES

#1-10 (fictitiously named), individually, ERIE COUNTY, ERIE COUNTY DISTRICT

ATTORNEY'S OFFICE, ERIE COUNTY DISTRICT ATTORNEY JOHN/JANES DOES #1-

10 (fictitiously named), individually, and ROBERT RENNER (hereinafter, collectively

"Defendants"), respectfully alleges as follows:

              DH/D228049/FL2754

## NATURE OF THE ACTION

1.      This is an action for deprivation of Plaintiff's civil rights, committed by Defendants while acting in concert and under color of state law, of Plaintiff's rights, liberties, and immunities as guaranteed to her by reason of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. This Court is authorized to grant Plaintiff relief under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.

## JURISDICTION

2.      Jurisdiction in this matter is invoked in accordance with 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  Plaintiff further invokes the supplemental jurisdiction of the Court to hear and decide claims arising out of the pendant state claims pursuant to 28 U.S.C. § 1376(a).

## VENUE

3.      Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Erie, City of Buffalo; the actual place of employment of all of the individual Defendants is Erie County in the Western District of New York; and the County of Erie, City of Buffalo is within the jurisdiction of the Western District of New York.  The events surrounding this lawsuit occurred in Erie County, in the Western District of New York.  Additionally, Plaintiff resides within the County of Erie in the Western District of New York.

## PARTIES

4.      Plaintiff, ROMAN TAFFESE (hereinafter, "Taffese" or "Plaintiff"), is a resident of the United States who lives within the Western District of New York.

5.      Defendant, CITY OF BUFFALO ("Buffalo"), is a municipal subdivision of the State of New York located in the County of Erie, duly existing by reason of and pursuant to the

DH/D228049/FL2754

laws of the State of New York.

6.     Defendant, CITY OF BUFFALO POLICE OFFICER COURTNEY HALLIGAN ("PO Halligan") is a police officer who is being sued in her individual and official capacity and is an employee of the City of Buffalo. Upon information and belief, at all relevant times described herein, PO Halligan was acting under color of state law within the scope of her employment as a police officer employed by Buffalo.

7.     Defendant, CITY OF BUFFALO POLICE OFFICER STEPHEN LESNIAK ("PO Lesniak") is a police officer who is being sued in his individual and official capacity and is an employee of the City of Buffalo. Upon information and belief, at all relevant times described herein, PO Lesniak was acting under color of state law within the scope of his employment as a police officer employed by Buffalo.

8.     Defendant, CITY OF BUFFALO POLICE OFFICER MARK VARA ("PO Vara") is a police officer who is being sued in his individual and official capacity and is an employee of the City of Buffalo. Upon information and belief, at all relevant times described herein, PO Vara was acting under color of state law within the scope of his employment as a police officer employed by Buffalo.

9.     Defendant, CITY OF BUFFALO POLICE OFFICER NICHOLAS YANT ("PO Yant") is a police officer who is being sued in his individual and official capacity and is an employee of the City of Buffalo. Upon information and belief, at all relevant times described herein, PO Yant was acting under color of state law within the scope of his employment as a police officer employed by Buffalo.

10.     Defendant, CITY OF BUFFALO POLICE OFFICER JENNIFER ZANGHI ("PO Zanghi") is a police officer who is being sued in her individual and official capacity and is an

DH/D228049/FL2754

employee of the City of Buffalo. Upon information and belief, at all relevant times described herein, PO Zanghi was acting under color of state law within the scope of her employment as a police officer employed by Buffalo.

11.     Defendant, CITY OF BUFFALO POLICE OFFICER JOHN/JANE DOES #1-10 (fictitiously named), individually (hereinafter, collectively "PO Does") are police officers who are being sued in their individual and official capacities and are employed by Buffalo.  Upon information and belief, at all relevant times described herein, Buffalo PD John Does were acting under color of state law within the scope of their employment as police officers employed by Buffalo.

12.     Defendants PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does are collectively referred to herein as "Buffalo PD Officers" and/or "Buffalo PD Defendants".

13.     Defendant, ERIE COUNTY ("County"), is a municipal subdivision of the State of New York, duly existing by reason of and pursuant to the laws of the State of New York.

14.     Defendants, ERIE COUNTY DISTRICT ATTORNEY'S OFFICE ("ECDA Office") and ERIE COUNTY DISTRICT ATTORNEY JOHN/JANE DOES #1-10 (fictitiously named), individually ("DA Does"), are district attorneys who are being sued in their individual and official capacities and are employed by the County.  Upon information and belief, at all relevant times described herein, DA Does were acting under color of state law within the scope of their employment as District Attorney and Assistant District Attorneys employed by the County.

15.     Defendant ROBERT RENNER ("Mr. Renner"), upon information and belief, is a retired Corrections Officer of the Wende Correctional Facility who resides at 11 Deer Street,

Buffalo, New York. Upon information and belief, at all relevant times described herein, Mr. Renner conspired with the other Defendants who were acting under color of state law within the scope of their employment as police officers employed by Buffalo and the County.

## NATURE OF THE CASE

16.     This is an action seeking recovery for deprivation of Plaintiff Roman Taffese's civil rights guaranteed to her under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution committed by the above-named municipal Defendants in concert with Defendant Mr. Renner.

17.     Plaintiff Taffese bases this action upon the illegal search and seizure of her home by various members of the City of Buffalo Police Department on February 9, 2018, the subsequent false arrest of Plaintiff on February 24, 2018, and the subsequent malicious prosecution caused by the unlawful arrest of Plaintiff Taffese by the ECDA Office that ended with all charges being dismissed in favor of Plaintiff Taffese.

## STATEMENT OF RELEVANT FACTS

18.     Plaintiff Taffese is a fifty-four (54) year old female of Ethiopian descent, an observant Muslim, and a citizen of the United States of America, who resides in the City of Buffalo, County of Erie, State of New York.

19.     In or about October 2017, Plaintiff purchased a home located at 20 Deer Street, Buffalo, New York.

20.     Immediately upon moving into her home, Plaintiff was subjected to an onslaught of racial and ethnic taunts by Mr. Renner, who lives across the street from Plaintiff's residence.

21.     Upon information and belief, Mr. Renner was displeased that an observant Muslim of Ethiopian descent had moved into the neighborhood.

DH/D228049/FL2754

22.     In fact, within days of Plaintiff moving to her new home, Mr. Renner walked over to engage Plaintiff, asking if she was a tenant, to which Plaintiff replied that she had just bought the property.

23.     Upon hearing this, Mr. Renner became increasingly agitated and yelled at Plaintiff that the prior tenants of her house were Burmese refugees who left trash all over the place and shouted, in sum and substance, "Get the F out of this country."

24.     Plaintiff, upon hearing Mr. Renner's racial and ethnic rant, was in shock and disbelief, but decided to not engage Mr. Renner and go back into her house, praying that it was a onetime occurrence.

25.     After this initial encounter, Mr. Renner continued to engage in a series of intimidating acts with the intent of disrupting Plaintiff's use and enjoyment of her property, without provocation or any other lawful reason.

26.     Mr. Renner would purposely park his truck in front of Plaintiff's property every Friday morning to prevent the City of Buffalo Department of Sanitation (hereinafter, "Sanitation Department") from picking up her garbage that she left in front of her house for pickup.

27.     Mr. Renner's intent was to block Plaintiff's garbage so that her trash remained in front of her residence after the Sanitation Department came for pickup, causing garbage in front of her house to pile up, solely as a means to harass and intimidate Plaintiff based on her race, religion, and/or ethnicity.

28.     Plaintiff attempted to ask Mr. Renner to stop blocking her garbage multiple times to no avail.

29.     After Plaintiff's requests to amicably resolve the situation with Mr. Renner failed, Plaintiff was forced to file a complaint with the City of Buffalo Police Department (hereinafter,

"Buffalo PD").

30.     However, the Buffalo PD simply ignored Plaintiff's complaint, essentially countenancing Mr. Renner's harassing behavior toward Plaintiff, which continued.

31.     On February 9, 2018, Plaintiff woke up and placed her garbage in front of her residence for pickup.

32.     As soon as Plaintiff went back into her residence, Mr. Renner moved his truck from where it was parked overnight and intentionally parked in front of Plaintiff's residence in order to prevent the Sanitation Department from picking up her garbage.

33.     Plaintiff then proceeded outside and gently placed her garbage bag on top of Mr. Renner's truck and waited for it to be picked up by the Sanitation Department.

34.     Mr. Renner, upon seeing this, took a photo of the garbage that Plaintiff gently placed on his truck and contacted the Buffalo PD to have Plaintiff arrested.

35.     Upon information and belief, Mr. Renner falsely claimed that Plaintiff placing a light garbage bag on top of the hood to his vehicle caused damage in the amount of $120.00 in order to have Plaintiff arrested.

36.     Later that day, PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and/or PO Does arrived at Plaintiff's residence at the behest of Mr. Renner.

37.     Plaintiff then opened her front door to see why there were so many police officers responding to her neighborhood.

38.     PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and/or PO Does then approached Plaintiff's residence and asked her to produce identification, despite having no legal reason to do so, while Plaintiff was lawfully on her porch and no crime having been committed.

39.     In an attempt to comply with the Buffalo PD Officers' requests, Plaintiff advised

PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and/or PO Does that, although she was not giving them permission to enter her house, she would go upstairs and get her identification for the officers.

40. Immediately thereafter, PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does proceeded to enter Plaintiff's residence without consent.

41. PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does did not have a warrant to enter Plaintiff's household at that time or any time thereafter.

42. PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does did not have probable cause that a crime was being committed that would allow them to enter Plaintiff's household without a warrant and lacked any exigent circumstances for same.

43. While inside Plaintiff's residence, PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does continued to verbally berate Plaintiff and intimidate her in retaliation for the dispute and past complaints against Mr. Renner.

44. While inside Plaintiff's residence, PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does proceeded to search Plaintiff's residence without consent, probable cause, or other legal justification for same with the intent to intimidate her, even though Plaintiff was cooperative at all times.

45. This lack of justification prior to entry included, although not exclusively, the fact that the aforementioned Buffalo PD Officers were aware that: (1) no warrant had been obtained; (2) there was no "hot pursuit" which preceded the search of the house; (3) there was no evidence which was feared to be destroyed; (4) the search was not incident to an arrest; and (5) there were no individuals requiring assistance inside the house.

46. While the Buffalo PD Officers were in her home, Plaintiff attempted to video

DH/D228049/FL2754

record the matter with her cell phone and was repeatedly threatened with arrest if she did not stop recording the incident.

47.     After Plaintiff provided the Buffalo PD Officers with identification, PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does exited Plaintiff's residence and left the area without making an arrest because there was no probable cause that a crime had been committed.

48.     As a result of the above, Plaintiff was placed in imminent fear of both her health and safety.

49.     On or about February 14, 2018, Plaintiff, in shock and disbelief that the aforementioned events occurred, decided to file a formal complaint with Buffalo PD Commissioner Byron Lockwood outlining the unconstitutional actions of the Buffalo PD Officers and Robert Renner on February 9, 2018.

50.     On or about February 23, 2018, in retaliation for filing a formal complaint against the Buffalo PD for the events that transpired in Plaintiff's residence on or about February 9, 2018,  PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does proceeded to Plaintiff's residence that night and started banging heavily on Plaintiff's door without a warrant and/or legal justification for same.

51.     Plaintiff refused to allow the aforementioned Defendant Officers into her home despite their numerous demands for same and heavy banging on the door, which placed Plaintiff in imminent fear of her health and safety.

52.     PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does had no legal justification to enter Plaintiff's property that evening and did so solely in retaliation for Plaintiff filing past complaints against the Buffalo PD and Robert Renner.

DH/D228049/FL2754

53.     The following day, on February 24, 2020, Plaintiff, still in shock and disbelief at what occurred the night before, went to the Buffalo PD, D-District Precinct, in order to file an additional complaint with the Buffalo PD regarding the events that transpired on February 23, 2018 and also to request a police escort home because Plaintiff was frightened to go back to her house alone after the events that transpired the night before.

54.     Plaintiff was immediately arrested upon her arrival at the Buffalo PD Precinct despite no crime being committed or legal justification for same.

55.     PO Halligan, PO Lesniak, and/or PO Yant, in concert with PO Vara, PO Zanghi, PO Does and Mr. Renner, conspired and concocted the trumped-up allegations of wrongdoing by Plaintiff, where they falsely accused her of criminal mischief with intent to damage property in violation of New York Penal Law 145.00(1) and harassment in violation of New York Penal Law 240.26(1) for placing a light garbage bag on top of Mr. Renner's truck on February 9, 2018.

56.     The aforementioned Defendant Officers detained and arrested Plaintiff, even though no probable cause existed for the arrest.

57.     Plaintiff was then strip-searched and subjected to degrading and abusive treatment throughout the unlawful detention at the Buffalo PD, D-District Precinct.

58.     PO Halligan, in concert with PO Lesniak, PO Yant, PO Vara, PO Zanghi, and PO Does, signed the accusatory instrument for the prosecution of Plaintiff.

59.     In continuation of the illegal and unconstitutional conduct, Defendants County, ECDA Office and DA Does (collectively, the "Erie County Defendants") then prosecuted Plaintiff on the aforementioned charges.

DH/D228049/FL2754

60.     The criminal charges levied against Plaintiff were initiated purely to cover-up the illegal and unconstitutional conduct of PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, PO Does and Mr. Renner.

61.     Plaintiff was held overnight in jail and, upon information and belief, released on her own recognizance after her arraignment on the charges the following day.

62.     The Erie County Defendants, acting in concert with the Buffalo PD Officers, initiated and continued the prosecution of the charges without a legal basis to do so.

63.     After receiving exonerating evidence and/or evidence which vitiated any probable cause against Plaintiff, the Erie County Defendants nonetheless continued same.

64.     The initiation and/or continuation of these charges was performed by the Erie County Defendants as part of a conspiracy with the Buffalo PD Officers and Robert Renner to insulate them from potential liability for their past illegal and/or unconstitutional actions.

65.     Defendants arrested and prosecuted Plaintiff Taffese for crimes which Plaintiff did not commit and for which there was no probable cause to charge and prosecute Plaintiff.

66.     The prosecution of Plaintiff was initiated with malice.

67.     The prosecution of Plaintiff was continued after probable cause was vitiated.

68.     The prosecution was continued solely to cover-up the Buffalo PD Officers and Robert Renner's unlawful and unconstitutional conduct.

69.     As a result of the malicious prosecution, Plaintiff was required to pay for the services of a criminal defense attorney at a substantial cost to her.

70.     Plaintiff was required to appear in court multiple times after Defendants had incontrovertible video and/or photographic evidence that Plaintiff had not committed any of the crimes she was charged.

DH/D228049/FL2754

71.     Defendants continued the prosecution solely in retaliation for making past complaints about the Buffalo PD and Robert Renner.

72.     The prosecution ended upon a jury verdict of not-guilty in favor of Plaintiff on December 6, 2018, when all charges were dismissed in her favor. Plaintiff filed timely Notices of Claim and the statutory period has since passed without the claim being settled.

**<ins>AS AND FOR PLAINTIFF'S</ins>**
**<ins>FIRST CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S FOURTH AND</ins>**
**<ins>FOURTEENTH AMENDMENT RIGHTS FOR ILLEGAL SEARCH AND SEIZURE</ins>**
**<ins>AGAINST THE BUFFALO PD DEFENDANTS</ins>**

73.     Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length herein.

74.     At all times relevant to the allegations contained herein, PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does were acting under color of state law.

75.     The search of Plaintiff's residence (hereinafter, "20 Deer Street") on February 9, 2018 was performed without legal justification.

76.     The search of 20 Deer Street was performed without the consent of Plaintiff.

77.     On February 9, 2018 and for the duration of the search and seizure of 20 Deer Street, PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and/or PO Does violated the Fourth and Fourteenth Amendment Rights of Plaintiff with their illegal, wrongful, and/or unconstitutional search and seizure of 20 Deer Street.

78.     As a proximate cause of the search and seizure of 20 Deer Street by PO Halligan, PO Lesniak, PO Vara, PO Yant, PO Zanghi, and PO Does, Plaintiff was injured and/or damaged.

79.     As a proximate result of the Buffalo PD Defendants' intentional and malicious actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated,

DH/D228049/FL2754

endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

**AS AND FOR PLAINTIFF'S**
**SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS FOR FALSE ARREST AGAINST THE BUFFALO PD DEFENDANTS**

80.     Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

81.     On or about February 24, 2018, Plaintiff, on her own volition, went to the Buffalo PD, D-District Precinct seeking protection and to file a complaint for the prior unconstitutional acts of the Buffalo PD Defendants.

82.     As soon as Plaintiff arrived at the precinct, she was arrested, without probable cause that a crime had been committed, in retaliation for having made past complaints about the Buffalo PD and Mr. Renner.

83.     Following her arrest, Plaintiff was unlawfully detained, strip searched, and subjected to further degrading and abusive treatment by the Buffalo PD Defendants.

84.     The arrest and detention of Plaintiff by the Buffalo PD Defendants were conducted under color of state law within the purview of 42 U.S.C. § 1983 and within the scope of their employment by the Buffalo PD.

85.     Plaintiff was aware of her detention.

86.     Plaintiff did not consent to being detained.

87.     Defendants did not have an arrest warrant, search warrant, or probable cause to

arrest and continuously detain Plaintiff.

88.     Plaintiff's detention was not privileged as Defendants lacked probable cause for all and/or part of her detention. In fact, no reasonable officer would agree that there was probable cause for Plaintiff's arrest at the time of her detention.

89.     As a result of her illegal detention, Plaintiff's Fourth and Fourteenth Amendment rights were violated and Plaintiff was unlawfully deprived of her liberty without legal justification.

90.     As a proximate result of the Buffalo PD Defendants' intentional and malicious actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

<u>AS AND FOR PLAINTIFF'S</u>
<u>THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S FOURTH AND</u>
<u>FOURTEENTH AMENDMENT RIGHTS FOR MALICIOUS PROSECUTION</u>
<u>AGAINST ALL DEFENDANTS</u>

91.     Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

92.     On or about February 24, 2018, PO Halligan, PO Lesniak, and/or PO Yant, in concert with PO Vara, PO Zanghi, PO Does and Mr. Renner, conspired and concocted the trumped-up allegations of wrongdoing by Plaintiff, where they falsely accused her of criminal mischief with intent to damage property in violation of New York Penal Law 145.00(1) and harassment in violation of New York Penal Law 240.26(1) for placing a garbage bag on top of

DH/D228049/FL2754

Mr. Renner's truck on February 9, 2018.

93.     PO Halligan signed and filed a misdemeanor information charging Plaintiff with crimes that she did not commit.

94.     On or about February 24, 2018, PO Lesniak, PO Yant, PO Vara, PO Zanghi, and/or PO Does witnessed PO Halligan sign and file a misdemeanor information charging Plaintiff with crimes that she did not commit, but failed to intervene, despite knowing that such action was unlawful.

95.     On or about February 25, 2018, Plaintiff was arraigned and formally charged with numerous false criminal charges.

96.     The prosecution of Plaintiff was initiated and continued by Defendants with malice and without any legal basis.

97.     At the time the prosecution was commenced, Defendants had knowledge that Plaintiff was innocent of the charges alleged in the misdemeanor information.

98.     As a result of the malicious prosecution, Plaintiff was required to pay for the services of a criminal defense attorney at a substantial cost to her.

99.     As a result of the false, unlawful, and retaliatory charges, Plaintiff was required to make multiple appearances in Court.

100.     Defendants participated in the investigations of allegations against Plaintiff, as well as the criminal prosecution against her.

101.     The criminal prosecution was commenced despite Defendants' knowledge that Plaintiff did not participate in the alleged crimes and that probable cause for the arrest and initiation of the prosecution did not exist.

102.     The criminal prosecution was continued after Defendants knew that he/she/they

had no probable cause for the original arrest and/or initiation of the prosecution existed.

103.    By participating in the arrest and prosecution which they knew lacked probable cause and was instituted purely for retaliatory reasons, Defendants acted with malice against Plaintiff.

104.    The Erie County Defendants prosecuted Plaintiff with malice independent of their lack of probable cause.

105.    The Erie County Defendants demonstrated their malicious intent by requiring Plaintiff to either accept an ACD or plead guilty to the charges, despite having incontrovertible evidence that Plaintiff was innocent of the charges that were filed to cover up the prior unconstitutional conduct of the Buffalo PD Defendants and Mr. Renner.

106.    The prosecution of Plaintiff was terminated favorably to her and all charges were dismissed.

107.    As a result of Defendants' malicious prosecution, Plaintiff's Fourth and Fourteenth Amendment rights were violated.

108.    As a proximate result of Defendants' intentional and malicious actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

**AS AND FOR PLAINTIFF'S**
**FOURTH CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S FOURTH,**
**FIFTH, AND FOURTEENTH AMENDMENT RIGHTS PURSUANT TO 42 U.S.C. § 1981**
**AGAINST ALL DEFENDANTS**

109.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length herein.

110.    Plaintiff was targeted by Robert Renner in concert with the Buffalo PD Defendants solely because of her race, religion, and ethnicity, that being a Muslim of Ethiopian descent.

111.    Plaintiff was subject to illegal searches and seizures, was detained, arrested, prosecuted, and retaliated against by the Buffalo PD Defendants solely on the account of her race, religion, and/or ethnicity.

112.    The above referenced conduct was part of a pattern and practice of discrimination, based on race, religion, ethnicity, and color, by the Buffalo PD and Buffalo PD Defendant Officers, which violates 42 U.S.C. § 1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

113.    Defendants continued the aforesaid discriminatory and retaliatory treatment of Plaintiff on a continuous, ongoing basis, and Defendants' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff as a Muslim of Ethiopian descent).

114.    As a consequence of the Buffalo PD Defendants' wrongful actions, willful neglect, callous indifference, negligent behavior, and violation of state and federal laws, Plaintiff was deprived of her freedom, severely injured in her reputation, subjected to unlawful search and

seizure, maliciously prosecuted, and subjected to mental anguish, as well as suffered great fear, embarrassment, personal humiliation, and degradation.

115.    All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendments, the equal protection clause and the Fourth Amendment to the United States Constitution, as well as the protections afforded under 42 U.S.C. § 1981.

116.    As a proximate result of Defendants' intentional and malicious actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

**AS AND FOR PLAINTIFF'S**
**FIFTH CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S FOURTH, FIFTH,**
**AND FOURTEENTH AMENDMENT RIGHTS PURSUANT TO 42 U.S.C. § 1985**
**AGAINST ALL DEFENDANTS**

117.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length herein.

118.    The Buffalo PD Defendants' accusations and allegations, in concert with Mr. Renner, against Plaintiff were false, malicious, retaliatory, negligent, reckless, intentional, and wrongful and were intended to cause Plaintiff injury and to harass Plaintiff.

119.    The Buffalo PD Defendants brought about Plaintiff's illegal search and seizure, arrest on fabricated charges, and subsequent prosecution, all without lawful or proper basis or

justification, on account of her race and color, all without consideration of Plaintiff's rights and in violation of all of Plaintiff's rights.

120.    That the false arrest, false imprisonment, illegal search and seizure, and violation of the laws of the State of New York and Plaintiff's civil rights were brought about and caused by the actions of Defendants and that same were a clear and intentional abuse of process causing Plaintiff damages. All of these rights are secured to Plaintiff by the provisions of the Constitution of the United States and by 42 U.S.C. § 1985.

121.    As a proximate result of Defendants' intentional and malicious actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

<u>**AS AND FOR PLAINTIFF'S**</u>
<u>**SIXTH CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S FOURTH, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS PURSUANT TO 42 U.S.C. § 1986 AGAINST ALL DEFENDANTS**</u>

122.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length herein.

123.    Defendants knew or should have known that the detainment, false arrest, malicious prosecution, abuse of process, wrongful imprisonment, and illegal search and seizure of Plaintiff violated Plaintiff's rights guaranteed to her under the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. §§ 1983, 1985, and 1986.

124.   Each of the said Defendants had the authority, ability, and concurrent duty under 42 U.S.C. § 1986 to prevent the false arrest, wrongful detainment, and illegal search and seizure of Plaintiff's home and person, yet neglected to prevent said violations from occurring and, further, failed to intervene to protect or aid Plaintiff when such violations did in fact occur.

125.   The Buffalo PD Defendants failed to stop these wrongful actions, which constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

126.   The Erie County Defendants failed to stop these wrongful actions, which constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

127.   The Buffalo PD Defendants knew or should have known that the fabricated accusations against Plaintiff, at the behest of Mr. Renner, were violative of her Fourth, Fifth, and Fourteenth Amendment rights to due process, and were tantamount to unequal protection under the law, in violation of Plaintiff's fundamental rights under the constitution.

128.   Said Defendants had and continue to have the power to prevent the continued due process violations against Plaintiff, yet failed to prevent or dismiss the fabricated charges against Plaintiff, or to protect Plaintiff from the unwarranted and potential penalties of said charges in order to cover up the prior unconstitutional conduct of the Buffalo PD Officers and Mr. Renner.

129.   Defendant City of Buffalo's exoneration of and refusal to discipline the Defendant Officers for their misconduct against Plaintiff is neglectful of its duty to prevent the further violation of Plaintiff's rights under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, with such violation occurring as a result of said Defendant Officers being improperly cleared of any wrongdoing, despite substantial eye-witness and physical evidence to the contrary.

130.   As a proximate result of Defendants' intentional and malicious actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to

DH/D228049/FL2754

Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

**AS AND FOR PLAINTIFF'S**
**SEVENTH CLAIM FOR RELIEF FOR NEGLIGENT HIRING AND**
**FAILURE TO SUPERVISE (1983)**
**AGAINST ALL DEFENDANTS**

131.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

132.    Defendants were responsible for supervising, overseeing, and controlling their subordinates in the Buffalo PD and Erie County District Attorney's Office.

133.    The County intentionally failed to adequately supervise, control, oversee, and/or monitor the Buffalo PD and Erie County District Attorney's Office.

134.    Upon information and belief, Buffalo was aware that the Buffalo PD Defendants lacked probable cause at the time of Plaintiff's arrest, but failed to take adequate measures to resolve the wrong.

135.    Upon information and belief, the County was aware that DA Does knew that Plaintiff was innocent of the charges but continued with the prosecution to cover up the unconstitutional actions of the Buffalo PD Defendants and Robert Renner.

136.    Upon information and belief, it was the policy, practice, and custom of County and Buffalo to allow Defendants to allow and/or ignore violations of the Fourth, Fifth, and Fourteenth Amendments.

DH/D228049/FL2754

137.    Upon information and belief, it was the policy, practice, and custom of the County and City of Buffalo to allow the Buffalo PD to make retaliatory arrests of individuals without probable cause and/or other legal justification.

138.    Upon information and belief, it was the policy, practice, and custom of the County to allow the ECDA Office to coerce individuals, charged with crimes for which they knew they were innocent, to accept an ACD or plead to the charges in order to cover up the unconstitutional acts of other law enforcement members.

139.    Upon information and belief, Defendants failed to adequately train their employees to recognize constitutional violations and/or intervene to prevent the constitutional violations of their employees and/or peers.

140.    As a proximate result of Defendants' intentional and malicious actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorneys' fees.

<u>**AS AND FOR PLAINTIFF'S**</u>
<u>**EIGHTH CLAIM FOR RELIEF AGAINST**</u>
<u>**ERIE COUNTY AND CITY OF BUFFALO (MONELL CLAIM)**</u>

141.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

142.    Upon information and belief, it was the custom, policy, and practice of Defendants to fail to terminate the prosecutions of individuals upon receipt of evidence which would vitiate any probable cause possessed at the time of arrest.

143.    Employees of the Buffalo PD and/or the ECDA Office, such as the individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

144.    Employees of the Buffalo PD and/or the ECDA Office, such as the individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, that they would receive no reprimand or be punished for their conduct, and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

145.    By failing to supervise, train, and reprimand such Police Officers and District Attorney/Assistant District Attorneys, such as the individual Defendants in this action, Buffalo and County caused the injuries to Plaintiff through the actions and inactions of the individual Defendants.

146.    By maintaining a *de facto* policy of automatic indemnification, Buffalo and County caused the injuries to Plaintiff through the actions and inactions of the individual Defendants.

147.    Upon information and belief, it was the custom, policy, and practice of Buffalo and County to authorize and permit certain Police Officers and District Attorneys/Assistant District Attorneys, including the individual Defendants, to cause unlawful detentions and illegal searches and seizures.

DH/D228049/FL2754

148.     Upon information and belief, it was the custom, policy, and practice of Buffalo and County to encourage and cause constitutional violations by the Police Officers and District Attorney/Assistant District Attorneys employed by the City of Buffalo and Erie County, including the violations of Plaintiff's constitutional rights by the individual Defendants.

149.     Buffalo and County's failure to take action against their Police Officers and/or District Attorney/Assistant District Attorneys involved in this incident, and in other similar incidents, was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

150.     As authorized representatives of Defendants Buffalo and/or County, the Police Officers' conduct of illegal arrests, searches and seizure of arrestees, such as Plaintiff, constituted a custom, policy, and policies which renders Defendants Buffalo and County liable to Plaintiff as a "Person" acting under the color of state law.

151.     It was further the custom, policy, and practice of County to encourage District Attorney/Assistant District Attorneys employed by County to coerce those falsely accused of crimes, to either accept an ACD or plead guilty to the crimes with which they were falsely charged, with the intent to cover up the unconstitutional actions of their coworkers and/or peers, including the Buffalo PD and retired members of law enforcement.

152.     These customs, policies, and practices enforced by Defendants were the moving force, proximate cause, and/or affirmative link behind the conduct causing Plaintiff Taffese's injuries.

153.     Defendants Buffalo and County are, therefore, liable for violations of Plaintiff's constitutional rights as caused by its/their employees, as described in more detail in the paragraphs herein, and Plaintiff has suffered damages therefrom.

154.    As a proximate result of Defendants' customs, policies, and practices for creating an environment that tolerates, encourages, and condones such constitutional violations, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00),plus attorney's fees.

<u>AS AND FOR PLAINTIFF'S</u>
<u>NINTH CLAIM FOR RELIEF FOR VIOLATION OF PLAINTIFF'S</u>
<u>SUBSTANTIVE DUE PROCESS (1983) AGAINST</u>
<u>ALL DEFENDANTS</u>

155.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

156.    As a result of the facts alleged herein, Plaintiff was denied her substantive rights under the United States Constitution.

157.    Defendants abused process by continuously depriving Plaintiff of her substantive rights under the United States Constitution when they had full knowledge that their actions were unlawful and retaliatory in nature and that Plaintiff was innocent of the charges lodged against her.

158.    As a proximate result of Defendants' actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive

damages and attorney's fees.

**AS AND FOR PLAINTIFF'S**
**TENTH CLAIM FOR RELIEF FOR VIOLATION OF PLAINTIFF'S**
**PROCEDURAL DUE PROCESS (1983) AGAINST ALL DEFENDANTS**

159.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

160.    Defendants initially searched and seized, subsequently detained, and/or continued the detention of Plaintiff without a proper due process.

161.    Defendants initially searched and seized, subsequently detained, and/or continued the detention of Plaintiff by conspiring with each other to file false charges against Plaintiff in retaliation for making past complaints and to insulate the prior unconstitutional actions of the Buffalo PD and Mr. Renner.

162.    As a result of this detention, Plaintiff was denied her procedural rights under the United States Constitution.

163.    As a proximate result of Defendants' actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**AS AND FOR PLAINTIFF'S**
**ELEVENTH CLAIM FOR RELIEF FOR OFFICIAL MISCONDUCT (1983)**
**AGAINST ALL DEFENDANTS**

164.    Plaintiff repeats and realleges each and every allegation contained in those

DH/D228049/FL2754

paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

165.    Defendants injected themselves into a neighbor dispute and utilized the power of their law enforcement authority to retaliate against Plaintiff for a dispute with Mr. Renner, a retired member of the law enforcement community.

166.    The official misconduct began when Defendant(s) selectively targeted and subsequently arrested and prosecuted Plaintiff illegally without any justification under the law.

167.    Defendants attempted to leverage the criminal prosecution of Plaintiff for their own pecuniary and individual interests.

168.    Defendants protracted the criminal prosecution of Plaintiff in an attempt to cover up the prior unconstitutional conduct of the Buffalo PD Officers and Robert Renner.

169.    As a proximate result of Defendants' actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees, associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages and attorney's fees.

**AS AND FOR PLAINTIFF'S
TWELFTH CLAIM FOR RELIEF FOR FALSE ARREST AND
MALICIOUS PROSECUTION
(PENDENT) AGAINST ALL DEFENDANTS**

170.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

171.    Plaintiff was arrested on February 24, 2018 without probable cause.

DH/D228049/FL2754

172.    Plaintiff was aware of her detention.

173.    Plaintiff did not consent to being detained.

174.    Defendants did not have an arrest warrant, search warrant, or probable cause to arrest and continuously detain Plaintiff.

175.    Plaintiff's detention was not privileged as Defendants lacked probable cause for all and/or part of her detention. In fact, no reasonable officer would agree that there was probable cause for Plaintiff's arrest at the time of her detention.

176.    As a result of her illegal detention, Plaintiff's Fourth and Fourteenth Amendment rights were violated and Plaintiff was unlawfully deprived of her liberty without legal justification.

177.    Subsequent to Plaintiff's arrest, Plaintiff was maliciously prosecuted by Defendants.

178.    The prosecution of Plaintiff was initiated with malice.

179.    The prosecution of Plaintiff was continued with malice.

180.    The prosecution of Plaintiff was continued after Defendants received exonerating evidence and/or the totality of the evidence vitiated Defendant(s)' probable/reasonable cause.

181.    The initiation of the prosecution of Plaintiff amounted to an abuse of process.

182.    The continuation of the prosecution of Plaintiff amounted to an abuse of process.

183.    The prosecution of Plaintiff was terminated in her favor upon finding of not-guilty.

184.    As a proximate result of Defendant(s)' intentional and malicious actions, Plaintiff was physically, mentally, emotionally, and financially injured, humiliated, endured damage to Plaintiff's reputation, was the subject of public ridicule, caused to incur attorneys' fees,

DH/D228049/FL2754

associated legal expenses and other special damages, and has suffered great mental anguish, all to Plaintiff's damage in an amount to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Roman Taffese, respectfully requests judgment against Defendants as follows:

A.     Under the First Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees.

B.     Under the Second Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees.

C.     Under the Third Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees.

D.     Under the Fourth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages attorney's fees.

E.     Under the Fifth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees.

F.     Under the Sixth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees.

G.     Under the Seventh Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees.

H.     Under the Eighth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus attorney's fees.

I.      Under the Ninth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees.

J.      Under the Tenth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees.

K.      Under the Eleventh Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages and attorney's fees.

L.      Under the Twelfth Claim for Relief, in the amount of ONE MILLION ($1,000,000.00) DOLLARS plus punitive damages.

M.      For compensatory damages against all Defendants in an amount to be determined at trial but in no event less than ONE MILLION DOLLARS ($1,000,000.00);

N.      Such other and further relief as the Court deems just and proper.

Dated: Lake Success, New York
        May 7, 2020

Respectfully Submitted,
**THE RUSSELL FRIEDMAN LAW GROUP, LLP**
*Attorneys for Plaintiff, Roman Taffese*

By:     */s/Charles Horn*
        Charles Horn
        3000 Marcus Avenue, Suite 2E03
        Lake Success, New York 11042
        Tel: 516.355.9696

DH/D228049/FL2754